## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **RICHARD DEXHEIMER, on behalf of himself and on behalf of other similarly situated individuals,** | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )  **Case No.** |
| **vs.** | )<br>)<br>) |
| **ENJOY THE CITY NORTH, INC. d/b/a SAVEAROUND** | )<br>)<br>) |
| **Defendant.** | )<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD DEXHEIMER (hereinafter "Plaintiff"), on behalf of himself, and on behalf of all similarly situated individuals, by and through the undersigned counsel, hereby sues the Defendant, ENJOY THE CITY NORTH, INC. D/B/A SAVE AROUND, (hereinafter, "Defendant"), and states as follows:

## INTRODUCTION

1.      This is an action by Plaintiff against Defendant, his current employer, for unpaid overtime wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"). Plaintiff seeks all wages due to him under the law, liquidated damages where applicable, and reasonable attorney's fee and costs.

## JURISDICTION

2.      This action arises under the FLSA, 29 U.S.C. § 201, *et seq*.  This Court has jurisdiction over claims filed under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

## VENUE

3.      The venue of this Court over this controversy is proper based upon 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions occurred within this venue.

## THE PARTIES

4.      Plaintiff was, at all times relevant hereto, an "employee" of the Defendant as that term is defined by 29 U.S.C. § 203(e).

5.      The Defendant was, at all times relevant hereto, Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

6.      Plaintiff was, at all times relevant to the violations of the FLSA, through the performance of his job duties, engaged in commerce as defined by 29 U.S.C. § 203(b).

7.      Defendant is and was, at all times relevant hereto, an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1).

8.      Upon information and belief, Defendant, at all times material hereto, had annual gross sales or business of no less than $500,000.00 and was engaged in interstate commerce or in the production of goods for interstate commerce as defined in §§ 3(r) and 3(s) of the FLSA, 29 U.S.C. § 203(r) and § 203(s).

9.      Plaintiff has retained the law firm of Wilson McCoy, P.A. to represent him in this matter and has agreed to pay said firm a reasonable attorneys' fee for its services.

## FACTUAL ALLEGATIONS

10.     This action arises from an ongoing willful misclassification of the Plaintiff's position of a Senior Business Leader as exempt from the overtime requirements of the FLSA and Defendant's deliberate actions to not pay Plaintiff overtime wages.

11.     Under the provisions of the Fair Labor Standards Act ("FLSA"), employees are required to receive overtime wages at a rate of one and one-half times their regular hourly rate for hours they work in excess of forty during any particular workweek unless they qualify for an FLSA exemption.

12.     Plaintiff began working for Defendant on February 1, 2011.

13.     Plaintiff was initially hired by Defendant as a Business Leader in the sales division.

14.     Defendant provides audience development, membership rewards programs, fundraising materials, merchant eSignage, and branded or unbranded coupon books to its customers.

15.     Plaintiff was later promoted to a Senior Business Leader in the sales division.  At all times material to this Complaint, Plaintiff served as a Senior Business Leader for Defendant.

16.     While working as a Senior Business Leader, Plaintiff's primary job duty was to make sales to new and existing customers on behalf of Defendant from his home office.

17.     At all times material hereto, Plaintiff was paid by Defendant in the form of salary plus commissions.

18.     In 2015, Plaintiff was paid an annual base salary of $110,000.00 per year.

19.     In 2015, Plaintiff was paid commissions totaling $36,343.20.

20.     In 2015, Plaintiff was paid total wages of $146,343.20.

21.     In 2016, Plaintiff was paid an annual base salary of $110,000.00 per year.

22.     In 2016, Plaintiff was paid commissions totaling $73,654.00.

23.     In 2016, Plaintiff was paid total wages of $183,654.00.

24.     In 2017, Plaintiff was paid an annual base salary of $110,000.00 per year.

25.     In 2017, Plaintiff was paid commissions totaling $92.584.00.

26.     In 2017, Plaintiff was paid total wages of $202,584.00.

27.     Plaintiff's salary remained consistent week to week throughout his employment, regardless of hours worked.

28.     Plaintiff worked remotely from his home office located at 3585 Fodder Dr. Rockledge, Florida 32955.

29.     Plaintiff routinely worked 7:00 a.m. to 8:00 p.m. Eastern Standard Time, Monday through Friday in his home office for Defendant.

30.     Plaintiff was responsible for selling to and servicing customers in all four time zones in the continental United States.

31.     Plaintiff routinely worked an average of 11 hours per weekday to provide service through the Pacific coast states.

32.     Plaintiff also worked outside the hours of 7:00 a.m. to 8:00 p.m Eastern Standard Time when customer inquiry arose at night or on the weekends.

33.     Plaintiff routinely worked approximately 55 hours each week.

34.     Plaintiff routinely worked approximately 15 hours per week in overtime.

35.     In addition to the 55 hours worked each week, during the infrequent weeks in which Plaintiff was required to travel, Plaintiff typically worked an additional 5 hours while traveling and at the airport.

36.     Plaintiff's direct supervisor and management were aware of Plaintiff working over 40 hours every week.

37.     Plaintiff's direct supervisor and management were aware of Plaintiff working in the evenings and on weekends.

38.     Since the inception of his employment with Defendant through the date of filing this complaint, Plaintiff was never compensated one and one-half times his regular rate of pay for hours worked above 40 in a work week.

39.     Plaintiff's hours may be evidenced, in part, by using his computer log in records, phone records, emails, documentation showing Plaintiff's presence at customer locations, events, and conference calls.

40.     Plaintiff is currently employed by Defendant.

41.     While working as a Senior Business Leader, Plaintiff's job duties included web research for industry points of contact including names, phone numbers, or emails.

42.     While working as a Senior Business Leader, Plaintiff's job duties included making cold phone calls to potential and current customers.

43.     While working as a Senior Business Leader, Plaintiff's job duties included sending emails to potential customers.

44.     While working as a Senior Business Leader, Plaintiff's job duties included requesting connections with potential customers via LinkedIn.

45.     While working as a Senior Business Leader, Plaintiff's job duties included reviewing the websites of potential customers.

46.     While working as a Senior Business Leader, Plaintiff's job duties included researching various trade shows for different industries where a booth may be able to be setup.

47.     While working as a Senior Business Leader, Plaintiff's job duties included attending trade shows to hand out information about Defendant and the products which are offered.

48.     Plaintiff attend only 2-4 trade shows a year on behalf of Defendant.

49.     The average trade show that Plaintiff would attend would last 2 days.

50.     Plaintiff would attend after hours parties at trade shows to collect information about other companies.

51.     While working as a Senior Business Leader, Plaintiff's job duties included setting up phone call appointments to discuss needs of potential customers.

52.     While working as a Senior Business Leader, Plaintiff's job duties included explaining and showing products to potential customers through webinars and phone calls.

53.     While working as a Senior Business Leader, Plaintiff's job duties included asking questions and filling in statements of work based on customer feedback.

54.     While working as a Senior Business Leader, Plaintiff's job duties included submitting statements of work to management for changes and approval.

55.     While working as a Senior Business Leader, Plaintiff's job duties included sending statements of work changed and approved by management to customers for their approval.

56.     While working as a Senior Business Leader, Plaintiff's job duties included sending customer approved statements of work to the sales support team for fulfillment.

57.     While working as a Senior Business Leader, Plaintiff's job duties included sending customer approved statements of work to the accounting team for invoicing.

58.     While working as a Senior Business Leader, Plaintiff's job duties included sending customer approved statements of work to the management team.

59.     While working as a Senior Business Leader, Plaintiff's job duties included receiving invoice from the accounting team and forwarding it to the customer.

60.     While working as a Senior Business Leader, Plaintiff's job duties included relaying wants and needs of customers to the design team.

61.     While working as a Senior Business Leader, Plaintiff's job duties included getting a scheduled delivery date of products and informing customer of that date.

62.     While working as a Senior Business Leader, Plaintiff's job duties included calling customers to confirm that the items were received on the date they were given.

63.     While working as a Senior Business Leader, Plaintiff's job duties included calling customers to ensure that their bill was correct.

64.     While working as a Senior Business Leader, Plaintiff's job duties included calling existing customers to determine new goals or objectives of the company.

65.     While working as a Senior Business Leader, Plaintiff's job duties included relaying new goals, objectives, or desires of existing customers to the design team.

66.     While working as a Senior Business Leader, Plaintiff's job duties included sending proofs and ideas from the design team to the customer for approval.

67.     While working as a Senior Business Leader, Plaintiff's job duties included communicating customers approval to the art department.

68.     While working as a Senior Business Leader, Plaintiff's job duties included taking calls and emails regarding customer complaints.

69.     While working as a Senior Business Leader, Plaintiff's job duties included forwarding all customer complaint calls and email details to the customer service department.

70.     While working as a Senior Business Leader, Plaintiff's job duties included following up with the customer service department employee to ensure they got the complaint and were working on it.

71.     While working as a Senior Business Leader, Plaintiff's job duties included relaying to the customer the decisions and observations of the customer service department.

72.     While working as a Senior Business Leader, Plaintiff's job duties included calling or emailing merchants who customers wanted represented in Defendants suites of programs and offers.

73.     While working as a Senior Business Leader, Plaintiff's job duties included making occasional trips to visit members of the Brevard County School Foundation.

74.     While working as a Senior Business Leader, Plaintiff's job duties included conducting meetings and luncheons.

75.     While working as a Senior Business Leader, Plaintiff's job duties included delivering programs and products to schools for sale by the students.

76.     While working as a Senior Business Leader, Plaintiff's job duties included tabulating sales data from schools and picking up unsold books.

77.     While working as a Senior Business Leader, Plaintiff's job duties included tracking leads and contracts for customers.

78.     While working as a Senior Business Leader, Plaintiff's job duties included attending weekly conference calls with Plaintiff's direct supervisors.

79.     While working as a Senior Business Leader, Plaintiff's job duties included filling in sales data and submitting it to Defendant.

80.     While working as a Senior Business Leader, Plaintiff's job duties included weekly calls with supervisors' assistants in anticipation of weekly conference call.

81.     While working as a Senior Business Leader, Plaintiff's job duties included emailing provided work product samples to prospective customers.

82.     While working as a Senior Business Leader, Plaintiff's job duties included attending training sessions on Defendants new offerings and procedures.

83.     Plaintiff followed Defendant's guidelines and supervision when fulfilling his job duties.

84.     During his employment with Defendant, Plaintiff was fulfilling non-exempt work.

85.     Plaintiff received a salary for the non-exempt work performed for Defendant.

86.     Defendant did not record or otherwise maintain records of the hours Plaintiff worked each day or each workweek on its behalf.

87.     Defendant did not require Plaintiff to maintain or submit hourly or weekly timekeeping reports.

88.     Plaintiff adhered to and followed contracts that were negotiated by customers and defendants.

89.     Plaintiff was required to follow all company procedures and policies without any deviation.

90.     If Plaintiff was to deviate from any procedures or contracts, he was required to first receive approval from Defendant and customers.

91.    Plaintiff was required to seek approval from Defendant and supervisors for any decision he would make that might affect the company or contracts.

92.    Defendant knowingly and willfully violated the overtime provisions of the FLSA by misclassifying the position Plaintiff held, Senior Business Leader, with Defendant, as exempt from the overtime provisions of the FLSA.

93.    Based on his duties, Plaintiff's position did not qualify for any of the overtime exemptions to the FLSA.

94.    During Plaintiff's employment with Defendant, the Plaintiff's duties did not qualify for the administrative exemption under the FLSA.

95.    Plaintiff was not exempt under the administrative exemption.

96.    Plaintiff applied well-established techniques, procedures or specific standards described in manuals or other sources and did not exercise discretion nor use independent judgment with respect to matters of significance.

97.    Plaintiff's primary duties included following the direct procedures of Defendant and supervisors when fulfilling his job duties.

98.    Plaintiff did not exercise discretion and independence in matters of significance.

99.     Plaintiff did not have authority to, nor did he formulate, affect, interpret, or implement management policies or operating practices of Defendant.

100.    Plaintiff did not have authority to, nor did he perform, work which substantially effects Defendant's operations.

101.    Plaintiff did not have authority to commit the employer in matters that have significant financial impact.

102.    Plaintiff did not have the authority to waive or deviate from established policies and procedures without prior approval.

103.    Plaintiff did not have authority to negotiate and bind the company on significant matters.

104.    Plaintiff did not have the ability or responsibility to provide consultation or expert advice to management.

105.    Plaintiff did not have the ability or responsibility to investigate and resolve matters of significance on behalf of management.

106.    Plaintiff did not have the authority to represent the company in handling complaints, arbitrating disputes, and resolving grievances.

107.    Plaintiff did not perform any quality control, nor did he work or develop any performance or procedural policies of Defendant.

108.    Plaintiff performed work as the medium between the customer and the design and customer service team.

109.    Plaintiff never implemented management policies, never carried out major assignments, and never negotiate on behalf of the associations on significant matters.

110.    During Plaintiff's employment with Defendant, the Plaintiff's duties as a Senior Business Leader did not qualify for the executive exemption under the FLSA.

111.    Plaintiff was not exempt as an executive because he did not supervise the equivalent of at least two or more full time employees as part of his duties.

112.    Plaintiff did not manage employees for Defendant.

113.    Plaintiff did not set or adjust the rates of pay and hours of work for Defendant's employees.

114.    Plaintiff did not direct the work of at least two or more other full-time employees on a more than occasional but less than constant basis for Defendant.

115.    Plaintiff did not have the authority to hire or fire employees from Defendant.

116.    Plaintiff did not manage the enterprise or manage a customarily recognized department or subdivision of the enterprise.

117.    During Plaintiff's employment with Defendant, Plaintiff's duties as a Senior Business Leader did not qualify for the outside sales exemption under the FLSA.

118.    Plaintiff was not customarily and regularly engaged away from the employer's place of business in performing his primary duties.

119.    Plaintiff worked from his own home office.

120.    Plaintiff's home office was his primary place of business.

121.    Plaintiff's home office is an extension of Defendants business and is considered Defendants place of business.

122.    Plaintiff only met the salary requirement for the professional exemption.

123.    Apart from salary, Plaintiff did not meet any other requirement for the professional exemption.

124.    Plaintiff only met the salary requirement for the executive exemption.

125.    Apart from salary, Plaintiff did not meet any other requirement for the executive exemption.

126.    Plaintiff only met the salary requirement for the administrative exemption.

127.    Apart from salary, Plaintiff did not meet any other requirement for the administrative exemption.

128.    During his employment with Defendant as a Senior Business Leader, Plaintiff routinely worked workweeks in excess of forty (40) hours in a week.

129.    Defendant never paid Plaintiff overtime wages for any hours Plaintiff worked in excess of forty (40) in a workweek.

130.    Upon information and belief, Defendant willfully and illegally classified Plaintiff as exempt from the overtime wage provisions of the FLSA.

131.    The job duties performed by Plaintiff as Senior Business Leader are such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), Plaintiff should have rightly been classified as a non-exempt employee and eligible for overtime wages.

132.    Defendant employs human resources personnel and legal counsel to ensure compliance with all applicable state and federal statutes, including the FLSA provision regarding payment of overtime wages.

133.    Defendant knows or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA as they pertained to Plaintiff.

134.    As an employer, Defendant is responsible for the unlawful conduct and policies described herein related to the failure to comply with the provisions of the FLSA as applied to Plaintiff during the time he served as Senior Business Leader.

135.    Defendant did not seek or rely upon the advice of a Department of Labor opinion letter with respect to Plaintiff's classification as an exempt employee.

136.    As a result of the actions of Defendant in not paying legally required overtime wages to Plaintiff, Plaintiff has suffered economic damages.

137.    The actions of Defendant in deliberately failing to pay Plaintiff overtime wages were done for the purpose of enriching and benefitting Defendant.

138.    Defendant knew or should have known that Plaintiff was working more than 40 hours per week.

139.    Plaintiff put Defendant on notice of his misclassification by way of email dated July 24, 2018 (the "Notice of FLSA Misclassification"). A copy of Plaintiff's email dated July 24, 2018 to Defendant is attached hereto as **Exhibit "A".**

140.    After receiving the Notice of FLSA Misclassification, Defendant changed the commission structure of Plaintiff. A copy of Plaintiff's new commission structure is attached here to as **Exhibit "B".**

141.    Prior to providing Defendant with the Notice of FLSA Misclassification, Plaintiff was eligible for commission when he met the base goal of four times his salary in sales.

142.    After the providing Defendant with the Notice of FLSA Misclassification, Plaintiff is now required to meet his year-end total sales as a base goal for commission eligibility.

143.    Plaintiff was the only sales employee in the past year to substantially exceed his base commission goal.

144.    Defendant changed sales commission compensation plans to require employees to, in addition to the base commission goal, meet the previous year's gross sales amount before commissions will be paid out.

145.    Plaintiff is the only employee that this change has a substantial negative impact on.

146.    Upon belief and understanding, Plaintiff is one of two sales associates to exceed his sales requirement of 4x his salary.

147.    Upon belief and understanding, of those two employees who exceeded 4x their salary requirement, Plaintiff was the only associate to substantially exceed the goal, requiring that he gross nearly 1/3 more in sales than any other associate to be given any commission compensation at all.

148.    In the 3 years prior to issuing the Notice of FLSA Misclassification, Plaintiff has not had his commission compensation plan changed before the end of the plans term by Defendant. **(Exhibit "C")**

149.    By issuing the Notice of FLSA Misclassification to Defendant, Plaintiff engaged in protected activity under the FLSA.

150.    But-for Plaintiff's Notice of FLSA Misclassification, Defendant would not have changed Plaintiff's commission compensation plan.

151.    Defendant's change of Plaintiff's compensation plan was in retaliation for Plaintiff engaging in protected activity under the FLSA.

152.    Defendant's change of all sales associates plans was pretextual as Plaintiff was the only one substantially effected.

153.    In October of 2018, Defendant again changed the job requirements of Plaintiff by requiring that he produce 50 leads per week, up from 20 per week.

154.    Plaintiff previously met the 20 leads per week goal.

155.    Defendant knows or has reason to know that an increase in the amount of weekly leads will affect the time Plaintiff can give to each customer.

156.     Defendant knows or has reason to know that a decrease customer contact time will decrease sales potential.

157.     Defendant knows or has reason to know that a decrease in sales potential will lead to a decrease in commissions.

158.     But-for Plaintiff's Notice of FLSA Misclassification, Defendant would not have changed Plaintiff's lead requirements.

159.     Defendant's change of Plaintiff's lead requirements was in retaliation for Plaintiff engaging in protected activity under the FLSA.

160.     Plaintiff has been or will be harmed as a result of the retaliation by Defendant.

161.     Plaintiff has had to retain the services of Wilson McCoy P.A. and is required to pay its reasonable attorney fees.

## COUNT I
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT

162.     Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 161, above.

163.     Plaintiff, as Defendant's employee, was entitled to be paid at the statutory rate of one and one-half times Plaintiff's regular rate of pay for those hours worked in excess of forty (40) hours.

164.     Specifically, Plaintiff worked numerous weeks in excess of forty (40) hours a week, yet he was not compensated for any hours worked in excess of forty (40) at a rate not less than one and one-half times the regular rate at which he is/was employed.

165.     Throughout the employment of Plaintiff, the Defendant has repeatedly and willfully violated Section 7 and Section 15 of the FLSA by failing to compensate Plaintiff at a

rate not less than one and one-half times the regular rate at which he is/was employed for workweeks longer than forty (40) hours.

166.    At all times material hereto, Defendant failed to maintain proper/accurate time records as mandated by the FLSA.

167.    Defendant knew or should have known that Plaintiff was working more than 40 hours each week.

168.    As a result of Defendant's intentional, willful, and unlawful acts in refusing to pay Plaintiff time and one half his regular rate of pay for each hour worked in excess of forty (40) hours per week in one or more work weeks, Plaintiff has suffered damages and is incurring reasonable attorneys' fees and costs.

169.    Defendant's conduct was in reckless disregard of the overtime requirements of the FLSA.

170.    Defendant willfully violated the FLSA.

171.    Plaintiff is entitled his unpaid overtime and an equal amount as liquidated damages.

WHEREFORE, Plaintiff demands a judgment against Defendant for unpaid overtime wages found to be due and owing; an additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages; prejudgment interest in the event liquidated damages are not awarded; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

**COUNT II**
**COLLECTIVE ACTION, VIOLATION OF OVERTIME**
**PROVISIONS OF THE FAIR LABOR STANDARDS ACT**

172.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 161, above.

173.    At all times material, Defendant employed other non-exempt Business Leaders and Sales Associates that performed the same job duties as Plaintiff.

174.    These other Business Leaders and Sales Associates also worked for Defendant and worked a substantial number of hours in excess of forth (40) per week. For all intents and purposes, the other Business Leaders and Sales Associates were similarly situated to Plaintiff.

175.    Defendant knew or should have known that similarly situated individuals were working in excess of 40 hours each week.

176.    Defendant failed to pay individuals similarly situated to Plaintiff one and one-half times their regular hourly rate, for all hours worked in excess of forty (40) in each week, in violation of the Fair Labor Standards Act.

177.    Defendant's failure to pay such similarly situated individuals the required overtime rate was in reckless disregard of the Fair Labor Standards Act.

178.    As a direct and legal consequence of Defendant's unlawful acts, individuals similarly situated to Plaintiff have suffered damages and have incurred, or will incur, costs and attorneys' fees in the prosecution of this matter.

WHEREFORE, Plaintiff demands that similarly situated employees have judgment entered against Defendant for the payment of all overtime hours at one and one-half the regular rate of pay for the hours worked over forty for which Defendant did not properly compensate them, liquidated damages, reasonable attorneys' fees and costs incurred in this action, and all further relief that this court deems to be just and appropriate.

## COUNT III
## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

179.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 161, above.

180.    Plaintiff sent Notice of FLSA Misclassification to Defendant on July 24, 2018. **(Exhibit "A")**

181.    The Notice of FLSA Misclassification constituted protected activity pursuant to 29 U.S.C. § 215(a)(3).

182.    After engaging in protected activity, Plaintiff had his commission compensation plan changed twice.

183.    Upon belief and understanding, after the second change, Plaintiff is now required to meet a gross sales minimum for compensation which is approximately $200,000 more than the next similarly situated sales associate.

184.    Both commission plan changes occurred within four months of Plaintiff's protected activity.

185.    Defendant changed the commission plan in retaliation of Plaintiff's protected activity.

186.    Defendant increased the weekly lead requirements of Plaintiff by over 100%.

187.    Defendant increased the weekly lead requirements with knowledge that it would lower Plaintiff's potential to make sales.

188.    Defendant has raised Plaintiff's sales requirement to make commissions while increasing the number of leads generated weekly to decrease Plaintiff's sales potential.

189.    As a direct and legal consequence of Defendant's unlawful acts, Plaintiff has incurred, or will incur, damages in the form of decreased yearly commissions.

190.    As a direct and legal consequence of Defendant's unlawful acts, Plaintiff has incurred, or will incur, costs and attorneys' fees in the prosecution of this matter.

WHEREFORE, Plaintiff demands a judgment against Defendant for compensatory damages; an additional amount found to be due and owing as liquidated damages; prejudgment interest in the event liquidated damages are not awarded; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 16th day of November, 2018.

Respectfully submitted,

Paul L. Sutherland, Esq.
Florida Bar No. 1008093
Nathan McCoy, Esq.
Florida Bar No. 676101
WILSON MCCOY, P.A.
Point 100 Building,
100 E. Sybelia Ave, Ste. 205
Maitland, Florida 32751
Telephone: (407) 803-5400
Facsimile: (407) 803-4617
E-Mail:
psutherland@wilsonmmccoylaw.com
nmccoy@wilsonmccoylaw.com
yhernandez@wilsonmccoylaw.com

Attorneys for the Plaintiff