**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD DEXHEIMER,**

      **Plaintiff,**

v.     Case No:   6:18-cv-1980-Orl-22EJK

**ENJOY THE CITY NORTH, INC.,**
**LUKE STANTON and RAYMOND H.**
**STANTON,**

      **Defendants.**

**REPORT AND RECOMMENDATION**

This cause comes before the Court on the parties' Joint Motion for Approval of Settlement Agreement ("the Motion"), filed April 27, 2020. (Doc. 48.) Upon consideration, I respectfully recommend that the Motion be granted.

**I.     BACKGROUND**

On November 16, 2018, Plaintiff, Richard Dexheimer, instituted a collective action against Defendant, Enjoy the City North, Inc., d/b/a Save Around, alleging violations of the overtime wage compensation and retaliation provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (2018). (Doc. 1, ¶¶ 162–90.) Plaintiff filed an Amended Complaint on September 5, 2019, adding Luke Stanton and Raymond H. Stanton as Defendants.[1] (Doc. 33.) Plaintiff also alleged that the Stantons violated the FLSA's overtime wage compensation and retaliation provisions, and indicated that he was no longer pursuing a collective action. (*Id.* ¶¶ 173–94.)

---

[1] Luke Stanton is the Chief Executive Officer of Save Around, while Raymond Stanton is a partner of Save Around. (Doc. 33, ¶¶ 10–11.) Plaintiff alleges that the Stantons oversaw the day to day operations of Save Around and supervised Plaintiff. (*Id.* ¶¶ 12–13.)

In the Amended Complaint, Plaintiff alleged that he has been employed at Save Around since February 1, 2011, as a salaried, exempt Senior Business Leader. (*Id.* ¶¶ 23–24.) Plaintiff claimed he was improperly classified and, therefore, not paid the overtime compensation allegedly due to him. (*Id.* ¶¶ 103, 140.) As a Senior Business Leader, Plaintiff alleged that he routinely worked 55 hours a week and occasionally 60 hours a week when he had to travel for work. (*Id.* ¶¶ 44, 46.) Plaintiff also claimed that he emailed Defendants about his misclassification on July 24, 2018. (*Id.* ¶¶ 150–154, ¶ 162.) In response to the email, Defendants retaliated against Plaintiff by changing the commission structure in a way that adversely affected him. (*Id.*)

Defendants filed an Answer, disputing Plaintiff's allegations, and alleging that Plaintiff was an exempt employee. (Doc. 36 at 34.) Ultimately, the parties negotiated a compromise and settlement of Plaintiff's claims and requested leave for an *in camera* approval of the settlement agreement. (Doc. 44.) The Court rejected that request and directed the parties to file a renewed motion with the settlement agreement on the public docket. (Doc. 45.) The parties subsequently filed a renewed motion and the settlement agreement on the public docket, but I denied the motion without prejudice because the release was overly broad, running afoul of the FLSA, and the settlement agreement contained an amendments provision that left the parties free to circumvent the *Lynn's Food* review. (Doc. 47 at 5–6.) The parties now move for approval of their revised settlement agreement (the "Agreement"). (Doc. 48.)

## II.     STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight*

*Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

### III.   DISCUSSION

#### A.   Settlement Sum

According to the Agreement, Defendant has agreed to pay Plaintiff a total amount of $100,000, consisting of $15,000 in overtime wage compensation, $15,000 in liquidated damages,

---

[2] *See Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

and $70,000 for settlement of his retaliation claim.[3] (Doc. 48-1, ¶ 2.) Plaintiff indicated that he originally claimed overtime compensation of $232,304.80. (Doc. 20, ¶ 7(e).)[4] Because Plaintiff will receive less than the amount to which he claimed he was entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food,* 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages or their unpaid overtime compensation . . . in an additional equal amount as liquidated damages."). On review, I find the $30,000 Plaintiff has agreed to accept in satisfaction of his unpaid overtime claim to be fair and reasonable. Both parties are represented by counsel and wish to avoid the risk and expense of further litigation. (Doc. 48 at 4.) Thus, I find that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised his claim.

### B.    Attorney's Fees

Plaintiff's attorney will receive a total of $12,500 for fees and costs. (Doc. 48-1, ¶ 2.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 48 at 4); *Bonetti*

---

[3] The undersigned will not review the settlement of Plaintiff's retaliation claim, as it "does not serve to contaminate" his FLSA unpaid overtime wages claim. *Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-cv-1583-Orl-36GJK, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012) (citing *Coleman v. The Golf Channel, Inc.*, No. 6:09-cv-1254-Orl-DAB (M.D. Fla. filed on May 20, 2010), *report and recommendation adopted*, 2012 WL1165468 (M.D. Fla. Apr. 9, 2012)).

[4] Plaintiff claimed that he had 1690 of overtime hours spanning over three years. (Doc. 20, ¶ 7(a).) His overtime rate was $105.52, $132.43, $146.08 for 2015, 2016, and 2017 respectively.

*v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (If the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. Release

The parties' settlement agreement contains the following release provision: "[t]his Agreement shall constitute a waiver and release of retaliation or overtime claims Plaintiff might have under the FLSA against Defendants. . . . Plaintiff hereby knowingly and voluntarily releases Defendant of and from all claims brought for retaliation or overtime compensation under the Fair Labor Standards Act." (the "Release") (Doc. 48-1, ¶ 1.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Unlike *Moreno*, however, the Release here passes judicial scrutiny because it does not require Plaintiff to release unknown claims that are unrelated to his overtime wage claim in this case; rather, the release is limited solely to Plaintiff's FLSA claim against Defendant in this action. *Evans v. Wasser*, No. 8:18-cv-1942-T-36CPT, 2019 WL 2504619, at *2 (M.D. Fla. May 29, 2019), *report and recommendation adopted*, 2019 WL 2503192 (M.D. Fla. June 17, 2019); *Quinones v. Siemens Indus., Inc.*, No. 6:15-cv-1068-ORL-28TBS, 2016 WL 11579796, at *2 (M.D. Fla. Oct. 25, 2016), *report and recommendation adopted*, 2016 WL 11579809 (M.D. Fla.

Oct. 27, 2016).

## IV. RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion for Approval of Settlement Agreement (Doc. 48);

2. **APPROVE** the Settlement Agreement (Doc. 48-1);

3. **DENY AS MOOT** Plaintiff's Motion to Strike Defendants' Affirmative Defenses. (Doc. 39.)

4. **DISMISS** the case with prejudice; and

5. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 15, 2020.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record